```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE MIDDLE DISTRICT OF GEORGIA
                       COLUMBUS DIVISION

IN RE MENTOR CORP. OBTAPE       *    MDL Docket No. 2004
                                     4:08-MD-2004 (CDL)
TRANSOBTURATOR SLING PRODUCTS   *
                                     Case No.
LIABILITY LITIGATION            *    4:13-cv-400 (Perryman)
```

O R D E R

Defendant Mentor Worldwide LLC developed a suburethral sling product called ObTape Transobturator Tape, which was used to treat women with stress urinary incontinence. Plaintiff Patricia Perryman was implanted with ObTape and asserts that she suffered injuries caused by ObTape. Perryman brought a product liability action against Mentor, contending that ObTape had design and/or manufacturing defects that proximately caused her injuries. Perryman also asserts that Mentor did not adequately warn her physicians about the risks associated with ObTape. Mentor seeks summary judgment on all of Perryman's claims, contending that they are time-barred under Florida law. For the reasons set forth below, Mentor's summary judgment motion (ECF No. 34 in 4:13-cv-400) is granted.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a).  In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  A fact is *material* if it is relevant or necessary to the outcome of the suit.  *Id.* at 248.  A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party.  *Id.*

FACTUAL BACKGROUND

On May 19, 3005, Dr. Mahesh Patel implanted Perryman with ObTape to treat her stress urinary incontinence.  In June 2005, Perryman reported to Dr. Patel that she felt a foreign body in her vagina and that she was experiencing vaginal discharge.  Dr. Patel found a protrusion of the ObTape and told Perryman that he wanted to remove some of the sling.  Later that month, Dr. Patel attempted to revise Perryman's ObTape, but he could not locate any protrusion when he examined Perryman under anesthesia.  Perryman continued to suffer from vaginal discharge, and she began to experience dyspareunia.

In October 2005, Perryman returned to Dr. Patel complaining of dyspareunia.  Dr. Patel examined Perryman, found that her ObTape was protruding through her vaginal wall, and told her that he planned to excise the exposed portion of her sling.  Dr.

Patel performed the excision procedure in late October 2005, and Perryman understood that Dr. Patel "clipped" her sling to try to treat the discharge and the "sharpness" her partner felt during sex. Perryman Dep. 151:8-152:7, ECF No. 34-4. In November 2005, Perryman returned to Dr. Patel reporting that she continued to feel a foreign body in her vagina. Dr. Patel explained that the foreign body Perryman felt was the sling he had implanted in May, and he told Perryman that he wanted to remove more of the sling. Perryman wanted to have the ObTape removed because she believed it was causing infections and pain with sex. *Id.* at 123:14-21. Perryman believed that she was "having an allergy to [ObTape]" or that her body was rejecting the sling. *Id.* at 149:16-24. Dr. Patel removed another portion of Perryman's ObTape on November 8, 2005.

In February 2006, Perryman was still experiencing pain and discharge. She consulted Dr. Henry Cacciatore, who told her that he wanted to remove her remaining ObTape. Perryman was also told that her doctors wanted to implant a different type of sling, so she "wouldn't be feeling this object" and "was going to be okay." *Id.* at 130:23-131:14. Dr. Mark Swierzewski performed surgery on Perryman on February 17, 2006. He told Perryman that he "removed what he could" of the ObTape and then put in a different sling product. *Id.* at 133:10-22. Perryman testified that her body accepted the new sling better than it

3

accepted ObTape. *Id.* at 154:25-155:5. Some of her symptoms improved after the February 2006 surgery. *Id.* at 153:9-14.

Perryman asserts claims for negligence, strict liability (design defect, manufacturing defect, and failure to warn); breach of express warranty; breach of implied warranty; fraudulent misrepresentation; fraudulent concealment; and negligent misrepresentation. Mentor contends that all of Perryman's claims are time-barred under Florida law.

## DISCUSSION

Perryman filed her action in this Court on September 4, 2013 under the Court's direct filing order. The parties agreed that for direct-filed cases, the "Court will apply the choice of law rules of the state where the plaintiff resides at the time of the filing of the complaint." Order Regarding Direct Filing § II(E), ECF No. 446 in 4:08-md-2004. Perryman lives in Florida, and all of her ObTape-related treatment took place in Florida. The parties agree that Florida law applies to Perryman's claims.

Florida has a four-year statute of limitations for product liability actions, which applies regardless of the plaintiff's theory of the case.[1] Fla. Stat. § 95.11(3)(e). The statute of limitations begins to run "from the date that the facts giving

---

[1] Florida also has a four-year limitations period for fraud, warranty, and negligence actions. Fla. Stat. § 95.11(3)(a), (j) & (k).

4

rise to the cause of action were discovered, or should have been discovered with the exercise of due diligence." Fla. Stat. § 95.031(2)(b). For the statute of limitations to begin running, a plaintiff must know that she suffered an injury and have enough information to connect the injury to the defendant's product. *Univ. of Miami v. Bogorff*, 583 So. 2d 1000, 1004 (Fla. 1991); *see also Babush v. Am. Home Products Corp.*, 589 So. 2d 1379, 1381 (Fla. Dist. Ct. App. 1991) (finding a fact question on when the plaintiff's product liability claims accrued because there was no evidence in the summary judgment record of when the plaintiff knew or should have known of a causal connection between a drug and his injury). In *Bogorff*, for example, the statute of limitations for the plaintiffs' product liability claim began to run when the plaintiffs were aware of a dramatic change in their child's condition and of "the possible involvement" of a drug the child had ingested.[2] *Id.*

---

[2] *Bogorff* was both a product liability action against a drug manufacturer and a medical malpractice action against the doctor who prescribed the drug. Perryman notes that in medical malpractice cases, "knowledge of the injury as referred to in the rule as triggering the statute of limitations means not only knowledge of the injury but also knowledge that there is a reasonable possibility that the injury was caused by medical malpractice." *Tanner v. Hartog*, 618 So. 2d 177, 181–82 (Fla. 1993). This is not a medical malpractice case. Perryman seems to acknowledge that the proper inquiry here is whether she suffered "an injury distinct in some way from conditions naturally to be expected from the plaintiff's condition, and (as opposed to or in the medical malpractice context) exposure to the product in question. *Babush*, 589 So. 2d at 1381.

The Court previously examined accrual of Florida's statute of limitations for product liability actions in *Mandeville v. Mentor Corp.*, 4:13-cv-31, 2016 WL 873814, at *2 (M.D. Ga. Mar. 4, 2016). Perryman does not appear to contend that the Court erred in finding that a product liability action accrues under Florida law when a plaintiff knows or should know that she has injuries related to a product. In *Mandeville*, the Court found that the plaintiff's claims were time-barred under Florida law because she did not file her action within four years after learning that her doctor diagnosed her with an erosion of the ObTape, told the plaintiff that he would have to remove the eroded ObTape, and reconstructed the area where the erosion had occurred. *Id.* at *1-*2.

Though Perryman argues otherwise, it is difficult to distinguish *Mandeville* from her case. Perryman emphasizes that in one portion of her deposition, she stated that no doctor told her that ObTape was defective and that she was not explicitly told that the product caused her injuries. Perryman Dep. 149:5-13. Perryman contends that she did not realize that ObTape was causing her complications until 2013, when she saw a television commercial about mesh complications. But Perryman knew or certainly should have known that she suffered some injuries related to ObTape well before then. By February 2006 at the latest, Perryman knew that she had undergone several ObTape

excision procedures to treat her symptoms, including the foreign body sensation she had been feeling. She knew that Dr. Swierzewski wanted to remove what he could of the ObTape. She believed that her body had rejected ObTape, and she thought that her body accepted the new sling better than it accepted ObTape. From all of this, Perryman knew, or at least had enough information to know, that her injuries were related to ObTape by February 2006. She did not file this action until more than seven years later, in September 2013.

Perryman argues that even if her claims are untimely under Florida's discovery rule, the statute of limitations should be tolled by fraudulent concealment. "Fraudulent concealment applies when the defendant concealed the existence of the plaintiff's cause of action by fraudulent means." *W. Brook Isles Partner's 1, LLC v. Com. Land Title Ins. Co.*, 163 So. 3d 635, 639 (Fla. Dist. Ct. App. 2015). "Where there was no active concealment and a party with the exercise of due diligence could have discovered the facts, the statute of limitations is not tolled."[3] *Id.*

---

[3] Perryman points out that the *statute of repose* may be tolled under Florida law if the manufacturer "had actual knowledge that the product was defective in the manner alleged by the claimant and took affirmative steps to conceal the defect." *Stimpson v. Ford Motor Co.*, 988 So. 2d 1119, 1120 (Fla. Dist. Ct. App. 2008) (quoting Fla. Stat. 95.031(2)(d)). Perryman did not point to any authority that concealment of a defect—rather than concealment of a cause of action— tolls the *statute of limitations*.

As discussed above, Perryman knew of, strongly suspected, or had enough information to know of a connection between ObTape and at least some of her injuries by the time she had her last ObTape excision procedure in February 2006. A reasonable person in that situation would take some action to follow up on the cause of her injuries and try to find out whether the injuries were caused by a problem with ObTape, a problem with the implant surgery, or some other problem. But Perryman pointed to no evidence that she took any action to investigate her potential claims even though she knew (or had enough information to know) there was a connection between her injuries and the ObTape. Perryman argues that she exercised reasonable diligence by seeking medical treatment for ObTape complications until February 2006, which is when she knew or had enough information to know of a connection between ObTape and her injuries. But she did not point to any evidence that she exercised reasonable diligence *after* she discovered (or should have discovered) the connection. Under these circumstances, the Court concludes that fraudulent concealment does not toll the statute of limitations. Perryman's claims accrued in February 2006 at the latest. She did not file this action within four years, so her claims are time-barred.

CONCLUSION

For the reasons set forth above, Perryman's claims are time-barred under Florida law. Mentor's Motion for Summary Judgment (ECF No. 34 in 4:13-cv-400) is therefore granted.

IT IS SO ORDERED, this 13th day of September, 2016.

s/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA
